UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

DALE YOUNG, et al.,

        Plaintiffs,

    v.

DISTRICT OF COLUMBIA,

        Defendant.

Civil Action No. 14-1181
DAR

**MEMORANDUM OPINION**

Plaintiffs, Dale Young and minor child C.Y., brought this action against Defendant, the District of Columbia, to recover a total of $25,537.72 in attorneys' fees and costs incurred during the course of administrative proceedings pursuant to the Individuals with Disabilities Act ("IDEA"), 20 U.S.C. §§ 1400 *et seq*. *See* Complaint ("Compl.") (Document No. 1). This action was referred to the undersigned United States Magistrate Judge for full case management. Order Referring Case (Document No. 3). With the consent of the parties, this case was reassigned to the undersigned for all purposes. *See* (Document Nos. 16, 17).

Plaintiffs' Motion for Summary Judgment (Document No. 12) has been fully briefed, and is pending for determination by the court. *See also* Plaintiffs' Memorandum of Points and Authorities in Support of the Plaintiffs' Motion for Summary Judgment ("Pl.s' Mem.") (Document No. 12) and accompanying exhibits; Defendant's Opposition to Plaintiffs' Petition for Attorneys' Fees and Costs ("Def.'s Opp'n") (Document No. 13); Plaintiffs' Reply to Defendant's Opposition to the Plaintiffs' Motion for Summary Judgment ("Pl.s' Reply") (Document No. 14); Hearing Officer Determination ("HOD") (Document 12-2 at 23-31). Upon

consideration of the motion, the memoranda in support thereof and in opposition thereto; the exhibits offered in support of the motion, and the entire record herein, the court will grant Plaintiffs' motion in part.

**BACKGROUND**

C.Y. was 12 years old and attended a DCPS middle school at the time of the underlying administrative action. HOD at 3. During School Year ("SY") 2011/2012, C.Y. was in 6th grade and generally conformed to expected behavior standards with limited prompting. *Id*. In SY 2012/13, C.Y. began exhibiting behavioral problems resulting in C.Y.'s suspension about once per month during the SY. *Id*.

In approximately September of SY 2012/13, Plaintiff Dale Young contacted the counselor at C.Y.'s school, stated that he suspected C.Y. was having problems academically, and asked for testing to determine whether C.Y. was having problems learning. *Id*. Plaintiff Dale Young did not hear back from the counselor on this issue. *Id*. "However, DCPS had both parents coming up to the school to sit in class with [C.Y.] in attempt to avoid suspensions, DCPS had [C.Y.] interact with the counselor and social worker, and DCPS tried to work with parents to get [C.Y.] help outside the school." *Id*. C.Y. received failing grades for the first and second advisories of SY 2012/13. *Id*. In or about February 2013, Plaintiff Dale Young sent e-mails to three of C.Y.'s teachers expressing concern about C.Y.'s grades, informing them that he asked the counselor to conduct a testing of C.Y. and that he was waiting for a response, and suggesting that "perhaps [C.Y.] was acting out because [C.Y.] was academically slow in some areas." *Id*. at 4. After being told by the principal that she would suspend C.Y. if C.Y. remained at the school

and C.Y.'s homeroom teacher recommended removing C.Y. from the school, Plaintiff Dale Young withdrew C.Y. from the school. *Id*. at 4.

In February 2013, C.Y. began attending the second middle school for SY 2012/2013. *Id*. Plaintiff Dale Young shared his concerns about C.Y.'s academic ability, previous history, and request for testing at the previous school, with the special education coordinator (SEC). *Id*. It appears that the SEC decided to take a wait and see approach and that nothing was done about Plaintiff Dale Young's concerns. *Id*. Approximately three weeks after C.Y. began attending the second middle school, C.Y. began exhibiting behavioral problems and was subsequently suspended twice. *Id*. As there were only two days left of the school year when C.Y. was due to return, Plaintiff Dale Young decided not to take C.Y. back at the end of the school year. *Id*.

During the summer of 2013, DCPS began C.Y.'s initial evaluation for special education and related services. *Id*. In September 2013, DCPS conducted C.Y.'s comprehensive evaluation.[1] C.Y. was diagnosed with Disruptive Behavior Disorder Not Otherwise Specified and Attention-Deficit Hyperactivity Disorder, Combined Type. *Id*. at 5. For SY 2013/14 Plaintiff Dale Young enrolled C.Y. in the current DCPS middle school. *Id*. C.Y. began having behavioral problems during the second week of enrollment and was subsequently suspended "at least three times at the start of SY 2013/2014." *Id*. at 5.

On November 7, 2013, DCPS conducted an eligibility meeting for C.Y. "Although [C.Y.'s] advocate pointed out [C.Y.'s] many suspensions and problematic behaviors, the team determined that there was not enough information to support ED." *Id*. Ultimately, the team

---

[1] Cognitive testing revealed that C.Y.'s general intellectual ability, thinking ability, and cognitive efficiency are in the Average range, whiled C.Y.'s verbal ability is in the Low Average range. HOD at 4. Academic Achievement testing revealed that C.Y.'s reading and written language skills are in the Low range at a third grade level, while C.Y.'s math skills are in the Low Average at the fourth grade level. *Id*. C.Y. received multiple At Risk scores on the social emotional functioning scales utilized. *Id*.

determined that [C.Y.] qualified for special education and related services with a disability of OHI and ADHD." *Id.*[2]

C.Y. continued to exhibit behavioral problems and was again suspended. *Id.* Plaintiff Dale Young and DCPS disagreed regarding the cause of C.Y.'s behavioral problems. *See id.* at 5-6. On November 18, 2013, at a manifestation determination review meeting ("MDR") concerning C.Y.'s suspension, the MDR team determined that C.Y.'s behavior was not a manifestation of his disability. *Id.* at 5. Plaintiff Dale Young stated that C.Y.'s behavior at home was not disrespectful and "not as sever." *Id.* at 6. C.Y.'s advocate disagreed with the MDR team's determination, "asserting that C.Y. should be considered ("ED") instead of OHI and ADHD only." *Id.*

On November 26, 2013, C.Y.'s IEP team met to develop C.Y.'s initial IEP, which lists OHI (ADD or ADHD) as C.Y.'s primary disability. *Id.* The IEP required C.Y. to receive 3 hours per week of specialized instruction in general education, 2 hours per week of specialized instruction outside general education, and 120 minutes per month of behavioral support services. *Id.* DCPS indicated that C.Y. would receive additional 30 minutes per week of behavioral support that would not be listed in the IEP. *Id.* C.Y.'s advocate disagreed with the services provided, asserting that C.Y. needed a full-time therapeutic placement. *Id.* However, DCPS was concerned that pulling C.Y. out of general education and implementing too many services at the outset would stigmatize C.Y. *Id.* DCPS indicated a willingness to revisit the IEP after it had been given a chance to work. *Id.* C.Y. continued to exhibit behavioral problems in November

---

[2] The Hearing Officer noted, based on the testimony of a licensed clinical psychologist, that "[C.Y.] exhibits all of the factors that comprise ED, except for somatization." HOD at 5.

2013 and was suspended in December 2013.  *Id*.  DCPS continued with efforts to help modify C.Y.'s behavior.  *See id*.

*Due Process Complaint and Hearing*

On November 27, 2013, Plaintiffs Dale Young and C.Y. brought an administrative action against DCPS.  *Id*. at 1.  The parties were not able to resolve the matter during the resolution period.  *Id*.  A subsequent Prehearing Order identified the following Plaintiffs' claims for adjudication:

> i. Alleged failure to comply with Child Find obligations and/or timely evaluate or identify [C.Y.] as eligible for special education and/or develop an IEP for [C.Y.] and make services available in a timely manner;
>
> ii. Alleged inappropriate determination on or about November 18, 2013 that [C.Y.'s] conduct was not a manifestation of [C.Y.'s] disability and alleged failure to conduct an FBA and/or develop a BIP for [C.Y.] following a one week suspension, which exceeded 10 days of suspension in the same school year;
>
> iii. Alleged failure to develop an appropriate IEP on or about November 26, 2013 because the IEP failed to provide a full-time therapeutic setting for students with ED and ADHD and failed to provide sufficient behavior support services in light of [C.Y.'s] escalating behaviors; and
>
> iv. Alleged failure to conduct a timely FBA and convene a follow-up meeting to develop a BIP during SYs 2012/13 and 2013/14 (although Petitioner acknowledged DCPS supplied an FBA and a BIP at the resolution session).

HOD at 1.

As relief, Plaintiffs requested that the DCPS be ordered, or agree, to:

> a. Conduct or Fund a detailed Functional Behavioral Assessment and convene a meeting to review this assessment within 10 days and develop a Behavioral Intervention Plan for [C.Y.];

    b. Conduct a Comprehensive Auditory Processing Evaluation and Audiological Evaluation for [C.Y.] at market rate and any evaluations recommended from these;

    c. Revise C.Y.'s IEP to provide the student with increased counseling of at least 60 minutes per week outside the general education setting, additional behavior supports necessary, and placement in a full-time out of general education therapeutic setting;

    d. Fund the private placement of [C.Y.] with transportation;

    e. Award reasonable compensatory education to be independently funded for the violations committed in the instant case;

    f. Provide any other relief deemed appropriate and relating to the violations committed here; and

    g. Pay reasonable attorney fees and costs incurred in this matter.

Administrative Due Process Complaint Notice at 18 (Document 12-2 at 2-21); *see also* HOD at 2.

On January 8, 2014, the hearing officer convened the due process hearing. HOD at 2. Since the DCPS included C.Y.'s FBA and BIP in its five-day disclosures; agreed to conduct requested evaluations, and increased behavioral support services, and Plaintiffs withdrew their private school placement request, these items were removed from consideration. *Id.* Accordingly, the Hearing Officer identified the issues to be adjudicated as:

    1. Did DCPS fail to comply with its Child Find obligations toward [C.Y.]?

    2. Did DCPS incorrectly determine on November 18, 2013 that [C.Y.'s] conduct was not a manifestation of his ability and then fail to conduct a FBA and/or develop a BIP as required by IDEA?

> 3. Did DCPS fail to develop an appropriate IEP on or about November 26, 2013?

HOD at 3.

With respect to the first of the three issues, the Hearing Officer concluded that "Petitioner has met its burden of proof on this claim." *Id*. at 7. Further, the Hearing Officer concluded that C.Y. suffered harm as a result of DCPS's failure to comply with its Child Find obligations because [C.Y.] did not begin receiving the special education to which [C.Y.] was entitled until [C.Y.'s] initial IEP was developed well into SY 2013/14 on November 26, 2013." *Id*. Accordingly, the "Hearing Officer determined to grant Petitioner an award of compensatory education." *Id*. (citation omitted). The Hearing Officer awarded the Plaintiffs the requested compensatory education including, 100 hours of independent 1:1 tutoring, 30 hours of behavioral support, and 10 hours of family therapy. *Id*. at 8.

With respect to the second issue, the Hearing Officer noted that a review of the evidence revealed that C.Y.'s "problem behaviors are not consistent across settings and include an element of choice [.]" *Id*. Accordingly, the Hearing Officer concluded that "Petitioner failed to meet its burden of proving that DCPS denied [C.Y.] a FAPE by determining that [C.Y.'s] behavior which resulted in a suspension on November 18, 2013 was not a manifestation of [C.Y.'s] disability." *Id*.

With respect to third issue, the Hearing Officer concluded that "Petitioner has failed to meet its burden of proving that DCPS denied [C.Y.] a FAPE by failing to develop an appropriate IEP on or about November 26, 2013[,]" because the "IEP was not insufficient on its face" and Petitioner did not give the IEP a chance to work. *Id*. at 9.

After ordering the compensatory education as described above, the Hearing Officer denied all remaining claims and requests for relief in Plaintiffs' November 27, 2013 Administrative Due Process Complaint, with prejudice. *Id*.

**CONTENTIONS OF THE PARTIES**

*Plaintiffs' Prevailing Status and Reasonable Fee Request*

Plaintiffs assert that they are prevailing parties because they were "awarded the relief they sought." Pl.s' Mem. at 1. Plaintiffs further assert that the "Hearing Officer found that they met their burden of proof on *one of the issues in the complaint and granted them relief they requested*." *Id*. at 7 (emphasis supplied). Plaintiffs argue that they are prevailing parties because they "secure[d] a judgment or a court-ordered consent decree[,]" evidenced by the Hearing Officer's order that DCPS provide compensatory services, as required by *Buckhannon Bd. & Home, Inc. v. W. Va. Dep't of Health & Human Resources*., 532 U.S. 598 (2000). *Id*. Plaintiffs also maintain that they have met the three-part test for determining prevailing status as articulated in *District of Columbia v. Strauss*, 607 F. Supp. 2d 180 (D.D.C. 2009). *Id*. In sum, Plaintiffs argue that because the Hearing Officer's order was "accompanied by judicial relief . . . rather than merely finding that the Plaintiff met their burden of proof," the Court should find, consistent with case law in this District, that they are prevailing parties. *Id*.

Plaintiffs submit that their fee request is reasonable and provide a detailed itemization of tasks performed and accompanying hours expended by the attorneys and paralegals that worked on this case. *Id*. at 8-9; *see also* Exhibit 3 (Document No. 12-2) at 34-59. Plaintiffs also assert that their billing rate is reasonable, and offer exhibits demonstrating the skill, experience and reputation of the attorneys, as well as the qualifications of the paralegals, law clerk and legal

assistant who worked on this case. *See* Pl.'s Mem. at 9-10; Exhibits 4, 5, 6. Plaintiffs further submit that though the case law suggests that "fees are appropriate at the rate of the *Laffey* matrix," Plaintiffs have limited their fee request to "less than [three-quarters] of the *Laffey* matrix rate." Pl.'s Mem. at 10. Because the fees requested are reasonable, based on the hours expended and the billing rate, Plaintiffs request that this Court declare that the Plaintiffs are the prevailing parties and grant them an award of attorneys' fees in the amount of $25,308.59 and costs in the amount of $229.13, totaling $25,537.72. Pl.s' Mem. at 12.

Defendant, in this case, agrees to an award of fees at three-quarters of the *Laffey* Matrix rates. Def.'s Opp'n at 1. However, Defendant submits that the "number of hours reasonably spent on this matter by Plaintiff[s]' counsel should be significantly reduced for partial success." Def.'s Opp'n at 4. In sum, Defendant submits that because Plaintiffs, in the underlying administrative action, failed to meet their burden of proof with respect to two of their three claims, and "[t]he ordered relief represents less than half of what Plaintiff[s] requested[,]" the Court should reduce the fees sought by "at least half to reflect the limited success achieved in litigating this case." *Id*. at 5. Defendant does not address any of the costs claimed.

Plaintiffs, in their reply, submit that a reduction for partial success is inappropriate here under *Hensley*, because the claim on which Plaintiffs prevailed was "interrelated" to the claims on which they did not, and the award of "a significant amount" of compensatory education "makes the hours reasonably expended a satisfactory basis for making a fee award." Pl.s' Reply at 2 (quoting *Hensley v. Eckerhart,* 461 U.S. 424, 434 (1983)). Plaintiffs argue that a reduction of fees is inappropriate here because "this Circuit has concluded that, when separate legal claims are asserted but are based on the same facts, lack of success on one does not mean that the time

spent on the other unsuccessful claims should be disallowed." *Id*. at 3 (*quoting Medina v. District of Columbia*, 864 F. Supp. 2d 13, 16 (D.D.C. 2012). Finally, Plaintiffs argue that Defendant "understates the total effect of the litigation which resulted in an award of a significant award of compensatory education . . . for a significant violation of the IDEA . . . [that involved] denying [C.Y.] seven months of services." Pls.' Reply at 3. In sum, Plaintiffs maintain that this court should award fees in the amount requested because "although Plaintiffs did not receive all the relief they requested, the overall relief obtained, a significant amount of independent services to remedy a significant violation of the IDEA, makes the hours reasonably spent on the litigation a reasonable basis for the requested fee award." *Id*.

**APPLICABLE STANDARDS**

In actions brought pursuant to the IDEA, "the court, in its discretion, may award reasonable attorneys' fees as part of the costs" to the prevailing party. 20 U.S.C. § 1415(i)(3)(B)(I). In evaluating such a request, a court must first determine "whether the party seeking attorney's fees is the prevailing party," and if so, must then evaluate whether the requested fees are reasonable. *Middleton v. District of Columbia*, No. 14-01151, 2015 WL 5154944, at *2-3 (D.D.C. Aug. 15, 2015); *see also Wood v. District of Columbia,* 72 F.Supp.3d 13, 18 (D.D.C. 2014) (citing *Staton v. District of Columbia,* No. 13–773, 2014 WL 2700894, at *3 (D.D.C. June 11, 2014); *Douglas v. District of Columbia,* 67 F. Supp. 3d 36, 40 (D.D.C. 2014)).

With respect to the first prong of this inquiry, this Court has noted that a plaintiff may be considered a prevailing party for purposes of an award of attorneys' fees pursuant to IDEA "if [the plaintiff] succeed[s] on any significant issue in litigation which achieves some of the benefit

the [plaintiff] sought in bringing suit." *Middleton*, 2015 WL 5154944, at *3; *see also Green v. District of Columbia,* No. 14–00966, 2015 WL 1904325, at *4 (D.D.C. Apr. 13, 2015) (quoting *Hensley,* 461 U.S. at 433. Thus, an award of fees "must [be confined] to work done on the successful claims" by "weeding out work done on unrelated unsuccessful claims from any award." *Id.* (quoting *George Hyman Const. Co. v. Brooks,* 963 F.2d 1532, 1535 (D.C. Cir. 1992)). Where a plaintiff has achieved "only partial or limited success[,]" then

> [t]he district court may attempt to identify specific hours that should be eliminated, *or it may simply reduce the award to account for the limited success.*

*Green*, 2015 WL 1904325, at *5 (citation omitted) (emphasis supplied); *accord, Briggs v. District of Columbia*, No. 14–0002, 2015 WL 1811973, at *5 (D.D.C. Apr. 21, 2015).

There "is no precise rule or formula" applicable to this determination, and instead, the determination requires "an 'equitable judgment' in which a 'court necessarily has discretion.' " *Middleton*, 2015 WL 5154944, at *3 (citing *Green*, 2015 WL 1904325, at *5; *Hensley,* 461 U.S. at 437); *see also Brown v. District of Columbia,* 80 F. Supp. 3d 90, 98 (D.D.C. 2015) ("It is within a court's discretion to reduce the overall fee award to reflect [limited] success, regardless of whether the total number of hours expended was reasonable.") (citing *Hensley,* 461 U.S. at 436). Even in an instance in which a plaintiff obtained significant relief, a reduction of the award requested is appropriate "if [such] relief . . . is limited in comparison to the scope of the litigation as a whole." *A.B. by Holmes–Ramsey v. District of Columbia,* 19 F. Supp. 3d 201, 210 (D.D.C. 2014) (citations omitted); *see also Brown,* 80 F. Supp. 3d at 99 (reduction of fee request justified where "it is undisputed that Plaintiff received less than all of the relief he sought at the administrative level [.]"); *Haywood v. District of Columbia,* No. 12–1722, 2013 WL 5211437, at

*10 (D.D.C. Aug. 23, 2013) (citations omitted) (50% reduction of the award requested applied where the plaintiff presented four issues but prevailed entirely on only one, partially on another, and not at all on the remaining two, and the court could not determine, by a review of the invoice, which of the hours claimed were properly excluded). Indeed, where a reduction for limited success is warranted, the court has discretion "to determine the method and amount of [the] reduction[,]" and may "eliminat[e] specific hours or reduc[e] an award[.]" *Wilhite v. District of Columbia,* No. 14–1841, 2015 WL 3827135, at *7 (D.D.C. Jun. 22, 2015) (quoting *Hensley,* 461 U.S. at 436–37); *see also Brown,* 80 F. Supp. 3d at 99 ("the district court may try to determine specific hours that should not be included, or it may lower the award to account for partial success.").

## DISCUSSION

### *Plaintiffs Achieved Partial Success*

Upon consideration of the parties' submission in the context of the entire record herein, the court finds that Plaintiffs achieved partial success in the underlying administrative proceeding because (1) Plaintiffs prevailed only on one of the three issues presented, (2) the Hearing Officer denied all relief that Plaintiffs sought except for compensatory education, and (3) the Hearing Officer denied Plaintiffs' remaining claims and requests for relief with prejudice. *See* HOD at 9. As the court finds that Plaintiffs are the prevailing party for IDEA purposes, albeit partially prevailing Plaintiffs, and Defendants do not dispute that Plaintiffs are entitled to some award of fees and costs, the only issue remaining for determination is whether this court, as Defendant requests, should reduce Plaintiffs' relief sought to reflect their limited success in the underling administrative proceedings.

"[A] plaintiff may be considered a prevailing party for purposes of an award of attorneys' fees pursuant to IDEA if [the plaintiff] succeed[s] on any significant issue in litigation which achieves some of the benefit the [plaintiff] sought in bringing suit." *Middleton*, 2015 WL 5154944, at *3; *see also Green,* 2015 WL 1904325, at *4 (quoting *Hensley,* 461 U.S. at 433). Upon a finding of partial or limited success, a court may eliminate specific hours or "it may simply reduce the award to account for the limited success" *Green*, 2015 WL 1904325, at *5 (citation omitted); *accord, Briggs*; 2015 WL 1811973, at *5. The Court may reduce the overall fee award based on limited success, irrespective of whether the total number of hours expended is reasonable. *See Brown*, 80 F. Supp. 3d at 98; *Hensley*, 461 U.S. at 436.

Here, Plaintiffs request an award of a total of $25,308.59 in attorneys' fees for their efforts in the underlying administrative proceedings beginning on April 24, 2013 when Plaintiffs retained counsel, and culminating on April 1, 2014, when counsel reviewed the Amended IEP that was developed subsequent to the HOD. *See* Exhibit 3 (Document 12-2) at 59. Defendant asks that the court reduce this amount by at least half to reflect Plaintiffs' limited success. Def.'s Opp'n at 5. Plaintiffs, relying on *Hensley*, argue that though they prevailed on only one issue and received only an award of compensatory education, that the issue on which they prevailed was "interrelated" to the issues presented to the Hearing Officer, and that the level of success achieved "makes the hours reasonably expended a satisfactory basis for making a fee award." Pl.s' Reply at 2; *see also Hensley*, 461 U.S. at 434. Plaintiffs, relying on *Medina*, further argue that their successful claim is based on the same facts as their three unsuccessful claims, thus, this Court should allow for time spent on the whole administrative proceeding. *Id*. at 3 (*citing Medina*, 864 F. Supp. 2d at 16). Finally, Plaintiffs maintain that the award of compensatory

education was significant given, that DCPS denied C.Y. seven months of services.  Pls.' Reply at 3.

The court has no other means, apart from the Hearing Officer's findings, by which to determine the "level of success achieved."  Based on the record, the court finds that Plaintiffs did not obtain the full measure of the relief they requested warranting a "fully compensatory fee."  *Hensley*, 461 U.S. at 435; *see also* HOD at 2, 9.  The court also finds that *Medina*, on which Plaintiffs principally rely in support of their argument that the court should allow time spent on their unsuccessful claims, is distinguishable: *Medina* was a Title VII action; involved a jury trial, a compensatory award award including interest, attorney's fees, and costs, for which the court of appeals ordered a remittitur; and in fact, the *Medina* court reduced the plaintiff's fee award because that plaintiff's entries did not permit "the court to identify the total amount of time spent on each claim[,]" among other reasons.  *See Medina*, 864 F. Supp. 2d at 15, 21-22.

The court finds that in awarding relief of compensatory education only, and denying all remaining claims and relief requested, with prejudice, "the parameters of a reasonable award have been fixed by the Hearing Officer."  *See Middleton*, 2015 WL 5154944, at *4.  Further, in denying Plaintiffs' third claim, the Hearing Officer concluded that "Petitioner has failed to allow sufficient time to determine whether the IEP will effectively meet [C.Y.'s] needs[,]" thereby suggesting that the claim lacked merit or was premature.  *See* HOD at 9.  Accordingly, the court has no alternative other than to reduce Plaintiffs' request by a percentage to account for partial success where, as here, "the court cannot conclude from the invoice submitted which hours should be excluded[.]"  *Middleton*, 2015 WL 5154944, at *4 (quoting *Haywood*, 2013 WL 511473, at *12.

Plaintiffs have already limited their fee request to less than three-quarters of the *Laffey* Matrix rates.  However, the court finds that a reduction of the amount sought by 25 percent is appropriate to account for partial success.[3]  *See Middleton*, 2015 WL 5154944, at *4 (65 percent reduction of fee award applied where plaintiff prevailed only to a limited extent on one of two issues and plaintiff made "no effort to 'separate out' the hours attributable to the issue as to which she prevailed only in part."); *Brown,* 80 F. Supp. 3d at 99 (reduction of fee request justified where "it is undisputed that Plaintiff received less than all of the relief he sought at the administrative level [.]"); *Haywood*, 2013 WL 5211437, at *10 (citations omitted) (50 percent reduction of the award requested applied where the plaintiff presented four issues but prevailed entirely on only one, partially on another, and not at all on the remaining two, and the court could not determine, by a review of the invoice, which of the hours claimed were properly excluded).

*Costs Will be Awarded*

The Court finds that the costs Plaintiffs claim for copying, faxing, parking, and postage, *see* Exhibit 3 (Document 12-2) at 57-59, are reasonable and normally included as part of the award to a prevailing party in IDEA litigation in this District.  *Gaston v. District of Columbia*, No. 14-1249, 2015 WL 5029328, at *7 (D.D.C. Aug. 26, 2015) *adopted by,* No. 14-1249, 2015 WL 5332111, at *1 (D.D.C. Sept. 10, 2015); *see also McClam v. District of Columbia*, 808 F. Supp. 2d 184, 190-91 (D.D.C. 2011); *DeLa Cruz v. District of Columbia*, No. 14-293, 2015 WL

---

[3] The court makes no finding with respect to whether or not the *Laffey* rate is reasonable or unreasonable, or whether, in some circumstances, a rate of less than 75 percent of the *Laffey* rates may be warranted.

871527, at *8 (D.D.C. March 2, 2015). Accordingly, the court awards Plaintiffs costs in the amount of $229.13.

**CONCLUSION**

For all the foregoing reasons, it is, this 30th day of September, 2015,

**ORDERED** that Plaintiff's Motion for Summary Judgment (Document No. 12) be **GRANTED IN PART**.

An appropriate Order accompanies this Memorandum Opinion.

/s/
DEBORAH A. ROBINSON
United States Magistrate Judge